# Exhibit A

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 0:18-CV-60981-BB

ULTIMATE FITNESS GROUP, LLC D/B/A
ORANGETHEORY FITNESS, a Delaware
limited liability company,

        Plaintiff,

   v.

KYLE ANDERSON, an individual, and
DAVID LOVELL, an individual,

        Defendants.

### SECOND AMENDED COMPLAINT
### FOR INJUNCTIVE RELIEF AND DAMAGES

Ultimate Fitness Group, LLC d/b/a Orangetheory Fitness ("Ultimate Fitness" or "Plaintiff") hereby files this Second Amended Complaint against Kyle Anderson ("Anderson") and David Lovell ("Lovell")(collectively, "Defendants") as follows:

### NATURE OF THE ACTION

1.    This action arises from the misappropriation of Plaintiff's trade secrets by Defendant Anderson, a former owner of one of Plaintiff's franchisees, who then used these trade secrets in concert with Defendant Lovell to start a competitive fitness studio, Studio 3 Fitness LQA 1 LLC ("Studio 3"), in violation of Plaintiff's agreements with Defendants Anderson and Lovell.

2.    Count I is an action against Defendant Anderson for breach of his Franchise and Non-Compete and Non-Disclosure Agreements with Plaintiff by operating Studio 3 as a competitive business.  Count II is an action against Defendant Lovell for breach of his Franchise and Non-Compete and Non-Disclosure Agreements with Plaintiff by operating Studio 3 as a competitive business. Count II-A is an alternate count against Lovell for breach of contract; Count III is an action against both Defendants for violation of the federal Defend Trade Secrets Act.

Count IV is an action against Defendant Anderson for violations of the federal Stored Communications Act.  Count V is an action against both Defendants for violation of the Florida Uniform Trade Secret Act.  Count VI is an action against Defendant Lovell for tortious interference with Plaintiff's franchise and non-compete and non-disclosure agreements with Defendant Anderson.

3.      Plaintiff now seeks injunctive relief and damages arising from Defendants illegal actions.

### THE PARTIES

4.      Plaintiff is a Delaware limited liability company and Delaware citizen with its principal place of business in the Southern District of Florida. In 2010, Plaintiff Ultimate Fitness commenced business under the name "Orangetheory Fitness" and thereafter became one of the fastest growing and most popular fitness franchises in history, with more than 1000 Orangetheory Fitness franchisees now located or planned throughout the United States and around the world.

5.      Defendant Kyle Anderson is a Washington resident and citizen.  He is a former investor, shareholder or member of an Orangetheory franchisee who, as part of the operative franchise agreement, entered into a non-compete and non-disclosure agreement with Plaintiff. Along with Defendant Lovell, he is now a co-owner of Studio 3 and participates in the operation of the business.

6.      Defendant David Lovell is a Missouri resident. He is a former investor, shareholder or member of an Orangetheory franchisee who, as part of the operative franchise agreement, entered into a non-compete and non-disclosure agreement for which Plaintiff is a third-party beneficiary.  Along with Defendant Anderson, Defendant Lovell is now a co-owner of Studio 3 and participates in the operation of the business.

7.      Each Defendant conspired and collaborated with the other Defendant to do an unlawful act and executed an overt act in furtherance of the conspiracy causing damage to Plaintiff. Each defendant aided and abetted the actions of the other Defendants given that each defendant had knowledge of those actions, and provided assistance and benefitted from those actions. Each

of the Defendants was the agent of each of the other Defendant, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and with the permission and consent of the other Defendant.

## RELATED NON-PARTIES

8.      Studio 3 is a Washington limited liability company.  Since the spring of 2018, Studio 3 has operated a fitness studio located in Seattle, Washington. Studio 3 is a direct competitor with Plaintiff's Orangetheory brand and Plaintiff's franchisee studios, including one located less than a mile away from Studio 3's present location.

9.      Rachel Felix ("Felix") is a Washington resident. She is a former employee of an Orangetheory franchisee in Washington State. Felix is the girlfriend of Defendant Anderson and resides at his same addresses. One week after terminating her employment with Orangetheory's franchisee in Washington, her Orangetheory password was used by Anderson to access Plaintiff's computer database to misappropriate Plaintiff's customer lists and, upon information and belief, other trade secrets and confidential company information.

## SUBJECT MATTER JURISDICTION

10.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because this matter arises under the Defend Trade Secrets Act, 18 U.S.C. § 1832 et seq.

11.      This Court additionally has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because this matter arises under the Stored Communications Act, 18 U.S.C. § 2701 et seq.

12.      This Court has diversity jurisdiction under 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different states and because the amount in controversy exceeds $75,000.00 exclusive of interest and costs.  In particular, Plaintiff is a citizen of the State of Florida and Delaware, and Defendants Lovell and Anderson are citizens of Missouri and Washington, respectively.

13.      This Court may exercise supplemental jurisdiction over the state law claims made herein under 28 U.S.C. § 1367 because they are so related to claims in the action within this Court's

original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

## PERSONAL JURISDICTION

### Personal Jurisdiction over Defendant Anderson as to Count I, III, IV and V

14.     This Court has personal jurisdiction over Defendant Anderson as to Count I pursuant to Fla. Stat. § 48.193(1)(a)(9) and Fla. Stat. §§685.101 - §685.102 because this breach of contract claim arises from a Franchise Agreement and a Nondisclosure and Noncompetition Agreement between Defendant Anderson and Plaintiff  where (1) the transaction involves in the aggregate not less than $250,000 (2) the agreements contain a Florida choice of law provision, (3) the agreements contain a Florida personal jurisdiction and venue provision where Anderson, who resides outside of this state, agreed to submit to the jurisdiction of the courts of this state, and (4) the agreements include one party who is a Florida resident (Plaintiff).

15.     In addition, this Court has personal jurisdiction over Defendant Anderson as to Count I under Fla. Stat. § 48.193 because the choice of law provision in the Anderson agreements with Plaintiff, when coupled with Defendant Anderson's other contacts with Florida, are sufficient to establish personal jurisdiction over him. These additional contacts include Defendant Anderson (a) causing injury to Plaintiff in Florida, (b) attending at least five of Plaintiff's Orangetheory conferences in Florida where Defendant Anderson obtained confidential information about Plaintiff's business that Defendant Anderson is now using to compete with Plaintiff in violation of Anderson's agreements with Plaintiff, (c) sending royalty payments through his franchisee entity to Plaintiff in Florida during the term of his franchise agreement, and (d) obtaining Plaintiff's consent in Florida to transfer his franchise interest to a third party.

16.     This Court also has personal jurisdiction over Defendant Anderson as to Count I under Fla. Stat. § 48.193 because Defendant Anderson breached a contract with Plaintiff in this state by failing to perform acts required by the contract to be performed in this state, namely, Defendant Anderson was required to return all of Plaintiff's confidential materials to Plaintiff in

Florida upon termination of his franchise agreement but did not do so; instead, Defendant Anderson misappropriated, retained and used Plaintiff's confidential materials to compete with Plaintiff.

17.     This Court has personal jurisdiction over Defendant Anderson as to Counts III (DTSA), IV (SCA) and V (FUTSA) pursuant to Fla. Stat. § 48.193 because Defendant Anderson committed a tortious act within this state, namely, causing injury to Plaintiff in this state by his out of state use of Plaintiff's trade secrets which Plaintiff maintains over the internet or otherwise from its South Florida headquarters. In addition, Defendant Anderson (a) intentionally targeted Plaintiff in South Florida where Plaintiff maintains its corporate headquarters, (b) attended at least five of Plaintiff's Orangetheory conferences in Florida where Defendant Anderson obtained confidential information about Plaintiff's business that Defendant Anderson is now using to compete with Plaintiff in violation of Anderson's agreements with Plaintiff, (c) sent royalty payments through his franchisee entity to Plaintiff in Florida during the term of his franchise agreement, and (d) obtained Plaintiff's consent in Florida to transfer his franchise interest to a third party.

**Personal Jurisdiction over Defendant Lovell as to Count II, II-A, III, V and VI**

18.     This Court has personal jurisdiction over Defendant Lovell as to Counts II and II-A pursuant to Fla. Stat. § 48.193(1)(a)(9) and Fla. Stat. §§685.101 - §685.102 because this breach of contract claim arises from a Franchise Agreement and a Nondisclosure and Noncompetition Agreement between Defendant Lovell and Plaintiff or for which Plaintiff is a third-party beneficiary where (1) the transaction involves in the aggregate not less than $250,000 (2) the agreements contain a Florida choice of law provision, (3) the agreements contain a Florida personal jurisdiction and venue provision where Lovell, who resides outside of this state, agreed to submit to the jurisdiction of the courts of this state, and (4) the agreements include one party who is a Florida resident (Plaintiff).

19.     In addition, this Court has personal jurisdiction over Defendant Lovell as to Counts II and II-A under Fla. Stat. § 48.193 because the choice of law provision in the Lovell agreements with Plaintiff, when coupled with Defendant Lovell's other contacts with Florida, are sufficient to

establish personal jurisdiction over him. These additional contacts include Defendant Lovell (a) causing injury to Plaintiff in Florida, (b) attending at least three of Plaintiff's Orangetheory conferences in Florida where Defendant Lovell obtained confidential information about Plaintiff's business that Defendant Lovell is now using to compete with Plaintiff in violation of Lovell's agreements with Plaintiff, (c) sending royalty payments through his franchisee entity to Plaintiff in Florida during the term of his franchise agreement, and (d) obtaining Plaintiff's consent in Florida to transfer his franchise interest to a third party.

20.     This Court also has personal jurisdiction over Defendant Lovell as to Counts II and II-A under Fla. Stat. § 48.193 because Defendant Lovell breached a contract with Plaintiff in this state by failing to perform acts required by the contract to be performed in this state, namely, Defendant Lovell was required to return all of Plaintiff's confidential materials to Plaintiff in Florida upon termination of his franchise agreement but did not do so; instead, Defendant Lovell misappropriated, retained and used Plaintiff's confidential materials to compete with Plaintiff.

21.     This Court has personal jurisdiction over Defendant Lovell as to Counts III (DTSA) and V (FUTSA) pursuant to Fla. Stat. § 48.193 because Defendant Lovell committed a tortious act within this state, namely, causing injury to Plaintiff in this state by his out of state use of Plaintiff's trade secrets which Plaintiff maintains over the internet or otherwise from its South Florida headquarters. Defendant Lovell's tortious and illegal actions intentionally targeted Plaintiff in South Florida, where Plaintiff maintains its corporate headquarters and where Defendant Lovell traveled on at least 3 occasions to attend Plaintiff's Orangetheory fitness conferences to learn confidential information about Plaintiff's business that Defendant Lovell is now using to compete with Plaintiff in violation of Lovell's agreements with Plaintiff..

22.     This Court has personal jurisdiction over Defendant Lovell as to Count VI (Tortious Interference) pursuant to Fla. Stat. § 48.193 because Defendant Lovell committed a tortious act within this state, namely, intentionally procuring Anderson's breach of the Anderson Non-compete Agreement with Plaintiff that Defendant Lovell knew would harm Plaintiff in Florida and that Defendant Lovell knew has a Florida jurisdiction and venue provision.

**Personal Jurisdiction over both Defendants based on Conspiracy**

23.     To the extent that any Defendant is liable for conspiracy with the other Defendant as set forth in Count V-A, then such Defendant is subject to the personal jurisdiction of this Court based on the personal jurisdiction of the other co-conspirator.

**Personal Jurisdiction over all Counts based on Pendent Jurisdiction**

24.     To the extent this Court has personal jurisdiction over any defendant for any count, then that defendant is also subject to the personal jurisdiction of this Court for all other Counts asserted against him under the doctrine of Pendent Jurisdiction because all claims arise from a common nucleus of operative facts.

**VENUE**

25.     Venue is proper in this Court with respect to Defendant Anderson and Count I (breach of contract) because Defendant Anderson consented to venue in this Court in the agreement that forms the basis of Plaintiff's breach of contract claim against Defendant Anderson.

26.     Venue is also proper is this Court with respect to Defendant Anderson and Count I (breach of contract) because a substantial part of the events or omissions giving rise to the claim occurred in this District, namely, Defendant Anderson was required to return to Plaintiff in Florida copies of all of Plaintiff's confidential materials and failed to do so; instead, Defendant Anderson misappropriated, retained and used Plaintiff's confidential materials to compete with Plaintiff.

27.     Venue is proper in this Court with respect to Defendant Lovell and Counts II and II-A (breach of contract) because Defendant Lovell consented to venue in this Court in the agreement that forms the basis of Plaintiff's breach of contract claim against Defendant Lovell.

28.     Venue is also proper is this Court with respect to Defendant Anderson and Counts II and II-A (breach of contract) because a substantial part of the events or omissions giving rise to the claim occurred in this District, namely, Defendant Lovell was required to return to Plaintiff in Florida copies of all of Plaintiff's confidential materials and failed to do so; instead, Defendant Lovell misappropriated, retained and used Plaintiff's confidential materials to compete with Plaintiff.

29.     Venue is proper in this Court under 28 U.S.C. § 1391 as to both Defendants and claims because a substantial part of the events or omissions giving rise to the claims asserted against Defendants occurred in this District and because a substantial part of property that is the subject of this action – namely, Plaintiff's trade secrets – is situated in this District and Plaintiff has alleged that both Defendants are liable for either the unauthorized access or the unauthorized misappropriation and use of those trade secrets.

30.     To the extent that either Defendant is liable for conspiracy with the other defendant as set forth in Count V-A, then venue is proper in this Court for each such Defendant as to those counts where venue is proper for the other co-conspirator.

31.     To the extent that venue is proper for any one count, then venue is additionally proper in this Court as to both Defendants for all counts under the doctrine of pendent venue because all counts arise from the same nucleus of operative facts and because all claims are inter-related.

## GENERAL ALLEGATIONS

### Plaintiff's protection of its trade secrets

32.     In 2010, Plaintiff launched an innovative fitness start-up – ORANGETHEORY FITNESS – that combines a unique one-hour heart-rate based interval training workout with a fresh approach to instructor-led group workouts.

33.     Plaintiff is now one of the fastest growing and most popular fitness franchises in history with over 933 locations in 17 countries as of 2018.

34.     Plaintiff has spent millions of dollars and years of intense effort in acquiring members and building its Orangetheory brand.

35.     Among numerous other trade secrets, Plaintiff maintains confidential customer lists of current, inactive and prospective members, which it uses to maintain brand engagement and solicit new business.

36.     The prospective member names on Plaintiff's confidential customer lists are collected, in part, from internet advertisements or lead forms created by Plaintiff. Plaintiff's

confidential customer lists also identify which individuals are active members of an Orangetheory studio and which are inactive members.

37.     Plaintiff's customer lists derive independent economic value for Plaintiff from not being generally known to, and not being readily ascertainable by proper means by, others who can obtain economic value from their disclosure or use and Plaintiff has taken reasonable measures to protect the secrecy of these customer lists.

38.     These customer lists are accessible to certain Plaintiff employees, Orangetheory franchisees and certain franchisee employees via a password-protected web application.

39.     Plaintiff takes reasonable measures to protect the secrecy of these confidential customer lists.

40.     Plaintiff restricts access to these confidential customer lists by providing confidential login credentials only to those individuals who need to access the lists to conduct business on behalf of Plaintiff.

41.     Plaintiff and its Orangetheory franchisees require their respective employees to sign non-disclosure agreements with respect to this and other confidential information.

42.     Plaintiff also requires that its Orangetheory franchisees themselves sign non-disclosure agreements with respect to this and other confidential information including training and operating manuals and materials.

**Defendants' Misappropriation of Plaintiff's Trade Secrets**

43.     Between approximately November 2013 and July 12, 2017, Felix was employed as a fitness trainer and regional leader with an Orangetheory franchisee in Seattle, Washington.

44.     During her employment, Felix was assigned a username and password that allowed her to access Plaintiff's customer lists to conduct official business on behalf of Plaintiff's franchisee in many Orangetheory Fitness studios.

45.     On or about July 12, 2017, Felix terminated her employment at the Plaintiff's franchisee in order to start a new fitness company with Defendants Anderson and Lovell named Studio 3, which seeks to compete with Orangetheory and is located within a short walking distance

of the Orangetheory Fitness studio where Felix worked.

46.     Upon her resignation, Felix was aware that her prior authorization to access Plaintiff's customer lists immediately terminated.

47.     However, subsequent to Felix's termination – and while Defendants Anderson and Lovell were still owners of, or employed by, another one of Plaintiff's franchisees – Felix and Defendants Anderson and Lovell conspired and collaborated to misappropriate Plaintiff's confidential customer lists and to use those customer lists in the operation of Studio 3.

48.     Felix shared with Defendant Anderson her confidential Orangetheory password to access Plaintiff's customer lists over the internet.

49.     On July 19, 2017 and July 26, 2017, Anderson used Felix's old Orangetheory password to access and download at least three separate customer lists of Plaintiff for the Seattle: Lower Queen Anne, Seattle: Belltown, and Seattle: Capitol Hill Orangetheory Fitness locations in Washington state with collectively the contact names, email addresses and phone numbers for over 20,000 members and prospective members, including lists identifying "active" and "inactive" Orangetheory members. These studio locations and customer lists were not associated with Anderson's or Lovell's Orangetheory franchises. Upon information and belief, Defendant Lovell directed Anderson's actions and conspired and collaborated with Anderson and Felix to misappropriate this confidential data.

50.     Plaintiff maintains access logs that record the date its customer lists are accessed, along with the usernames and internet-protocol addresses used to access the lists. These access logs confirmed Felix's password was used to gain unauthorized access of Plaintiff's customer lists.

51.     On July 26, 2017, the same day Felix's password was used for a second time to access and misappropriate Plaintiff's customer lists, Defendant Anderson emailed copies of Plaintiff's Belltown, Capitol Hill and Lower Queen Anne lists, including lists identifying "active" and "inactive" Orangetheory members, to his brother Chase Braxmeyer. Chase then extracted the contact details from Ultimate's customer lists and compiled them in an excel file that he sent back to Anderson titled "Studio3 Potential Clients.xlsx." Over the next month, Anderson exchanged

additional copies of Ultimate's customer lists with others at Studio 3, including Lovell, Braxmeyer and Frank Rodriguez.

52.    Documents produced by Defendants further show Defendant Anderson distributing Plaintiff's misappropriated lists to Defendant Lovell and others at Studio 3, as well as Defendant Lovell granting Ben Lovell and Madeline Lovell – presumably his children or other relatives – managerial access to Plaintiff's computer network for its Shoreline studio where Plaintiff's customer lists, membership data, sales data and other confidential information are stored.  Such access would enable them to – in his words – "play around" with the data and learn how to implement a similar system at Studio 3.

53.    Defendants used the customer details listed in Plaintiff's customer lists to contact individuals identified therein and to solicit those individuals to join Defendants Anderson and Lovell's new competing fitness studio, Studio 3, located at 229 Queen Anne Avenue N, Seattle, Washington, less than a mile away from the fitness studio of Plaintiff's franchisee located at 500 Mercer St, Seattle, Washington.

54.    To date, over 200 individuals from Plaintiff's misappropriated lists have joined Studio 3.

55.    Defendants' use of Plaintiff's misappropriated lists and materials has continued to date.

56.    Defendants have advertised the Studio 3 fitness studio on Studio 3's website (studio3fit.com), its Facebook page and through its transmittal of emails to prospective customers.

57.    Upon information and belief, Defendants' Studio 3 fitness studio opened for business in April 2018.

58.    Defendants also misappropriated and used Plaintiff's confidential training and operating manuals, guides and materials (previously supplied by Plaintiffs to Defendants Anderson and Lovell as former franchisees) in the operation of Studio 3 and other businesses owned or operated by Defendants Lovell or Anderson, including a cryotherapy business located adjacent to Studio 3.

**Anderson's Agreements**

59.     In August 2015, Defendant Anderson, through his company, Ashworth Investor's LLC, was assigned an interest in an Orangetheory franchisee in Washington State whereby he assumed all obligations under the operative franchise agreement (the "Anderson FA") and executed an Owner's Guarantee whereby he personally guaranteed performance under the Anderson FA. The Anderson Owner's Guarantee was signed by Anderson in his individual capacity. Also in August 2015, Anderson executed a non-compete and non-disclosure agreement (the "Anderson Non-Compete Agreement") with Plaintiff. The Anderson Non-Compete Agreement expressly provided that it represented the entire agreement of the parties concerning Anderson's non-disclosure and non-compete obligations.

60.     The Anderson Non-Compete Agreement prohibits Anderson from using or disclosing the Plaintiff's confidential information and trade secrets, and specifically identified "lists of actual or potential customers" as among Plaintiff's trade secrets.   The Anderson Non-compete Agreement also prohibited Anderson during the term of his franchise agreement with Plaintiff from (1) having a direct or indirect interest in as an owner, or performing services as a director, officer, manager, employee, consultant, representative, agent or otherwise for a competitive business wherever located, and (2) directing any prospective or existing business or economic opportunities away from Plaintiff or any of Plaintiff's franchisees, or their respective affiliates to a competitive business wherever located. The Anderson FA contains similar prohibitions in effect during the term of Anderson's franchise agreement with Plaintiff.

61.     Anderson's Non-Compete Agreement further contained additional non-compete obligations which would continue for the two-year period commencing on the earlier of (1) the termination or expiration of Anderson's franchise agreement with Plaintiff or (2) Anderson's complete disposition of his interest in the franchised business and franchisee. These non-compete obligations prohibit Anderson from having a direct or indirect interest in as an owner, or performing services as a director, officer, manager, employee, consultant, representative, agent or otherwise for a competitive business located at the site of Anderson's franchisee studio, within a

10-mile radius of his franchisee studio and within a 10-mile radius of any other franchisee studio that is in operation or under development on the effective date of termination or expiration of Anderson's franchise agreement or termination of Anderson's interests in the franchisee business. The Anderson FA contains similar non-compete obligations post-termination or expiration of that agreement.

62.     Upon information and belief, on or about August 2017, Anderson sold his interest in the franchised business and franchisee.

63.     If the Anderson FA terminated when Anderson sold his franchise interest, Anderson's post-termination non-compete obligations under that agreement would have been triggered at that time. Alternatively, if the Anderson FA did not terminate when Anderson sold his franchise interest, then Anderson would still be bound by the non-compete obligations in effect during the term of his franchise agreement.

64.     Irrespective of whether or not the Anderson FA terminated, Anderson is bound by the confidentiality and non-compete obligations of the Anderson Non-Compete Agreement.

65.     On or about August 25, 2017, Plaintiff consented to Anderson's assignment of his franchise interest to a third-party in a document titled Second Assignment and Assumption of Franchise License (the "Anderson Assignment").

66.     The Anderson Assignment specifically refers to Defendant Anderson's continuing confidentiality and non-compete obligations post-assignment:

   a.   The last WHEREAS clause of the Anderson Assignment states: "Section 10(c) of the Franchise [the Anderson FA] permits Assignor [Ashworth Investor's LLC] to assign its interest in the Franchise Agreement to Assignees provided that certain specified conditions are satisfied and in accordance with such provision."

      i.   Section 10(c) of the Anderson FA outlines conditions to the approval of a transfer of the franchise, including Section 10(c)(xii), which says "You and your transferring Owners must agree in writing for our and

13

the transferee's benefit to continue to observe the restrictions contained in Sections 13, 14 and 17 [of the Anderson FA]."

ii. Section 13 of the Anderson FA contains Defendant Anderson's confidentiality obligations and also identifies Plaintiff as a third-party beneficiary of nondisclosure and non-competition agreements that are required under the Anderson FA.

iii. Section 14 of the Anderson FA contains non-compete restrictions during the term of Anderson's franchise agreement.

iv. Section 17 of the Anderson FA contains terms relating to the termination of expiration of the franchise agreement, including specifically confidentiality obligations and non-compete restrictions, as well as other obligations which survive termination or expiration of the franchise agreement.

b. In Section 4(a) of the Anderson Assignment, Anderson "covenants, represents and warrants to Franchisor [Plaintiff] as follows: (i) Assignors [Anderson] . . . are the sole owners of the franchise represented by the Franchise and have the requisite power and authority to enter into this Assignment and to perform each of its obligations hereunder and under the Franchise; and (ii) Assignors [Anderson] agree to continue their obligations hereunder in accordance with such Agreements aforementioned as continuing members of the limited liability company which owns the Franchise."

67.     Thus, the Anderson Assignment incorporates Anderson's continuing confidentiality and non-compete obligations by reference.

68.     At the time Plaintiff entered into the Anderson Assignment, Plaintiff had no knowledge of Anderson's unauthorized use of Felix's passwords to access and misappropriate Plaintiff's customer lists.

69.     Although the Anderson Assignment included release language in Section 7, such

14

release does not apply to Anderson because the release was granted in favor of Ashworth Investor's, LLC only and not Anderson.

70. In fact, Anderson recognized his continuing obligations under both the Anderson FA and the Anderson Non-compete Agreement when he sought an amendment to the non-compete restrictions under those agreements in January – February 2018.

71. Alternatively, to whatever extent Section 7 does cover Anderson, by including a specific representation and warranty that Anderson would continue his obligations under the Anderson FA and related documents, the Anderson Assignment did not release Anderson from continuing to adhere to his confidentiality and non-compete obligations created under those documents.

72. Alternatively, to whatever extent Section 7 does cover Anderson, his use of Felix's password to gain unauthorized access to Plaintiff's computer systems for Orangetheory studios owned by third-party franchisees, and his misappropriation of customer lists associated with those studios, is outside the scope of the release.

73. Alternatively, to whatever extent Section 7 covers any of Defendant Anderson's misappropriation of Plaintiff's customer lists, Defendant Anderson is barred from asserting Section 7 as a defense because he fraudulently concealed his misappropriation of Plaintiff's customer lists by using Felix's Orangetheory passwords to access and misappropriate those lists.

74. Alternatively, even if the Anderson Assignment released all of Plaintiff's claims against Defendant Anderson as of August 25, 2017, Defendant Anderson's post-August 25, 2017 misappropriation and use of the Plaintiff's customer lists would not be covered by any release language contained in the Anderson Assignment.

75. Defendant Anderson's confidentiality and non-disclosure obligations have no expiration date. Had Anderson not breached his Non-Compete Agreement, Anderson's two-year non-compete obligations would have expired no sooner than August 2019.  But as a result of Anderson's breach, the expiration date of his non-compete obligations is tolled by the period of his breach, and thereby extended beyond August 2019.

76.     The Anderson Non-Compete Agreement and the Anderson FA provide for the tolling or extension of Anderson's non-compete obligations during the period of any breach.

77.     The Anderson Non-Compete Agreement and the Anderson FA provide for the recovery of attorney's fees to the prevailing party in any legal proceeding brought to enforce the agreement.

78.     Defendant Anderson's agreements contain Florida choice of law and venue provisions.

**Lovell's Agreements**

79.     In February 2011, Defendant Lovell, through his company DJL Fit, LLC, acquired an Orangetheory franchise and executed a franchise agreement (the "Lovell FA") with Plaintiff as well as an Owner's Guarantee whereby he personally guaranteed performance under the Lovell FA. Lovell's Owner's Guarantee was signed by Lovell in his individual capacity. In February 2011, Defendant Lovell also signed and agreed to by bound by a non-compete and non-disclosure agreement for which Plaintiff is expressly identified as a third-party beneficiary (the "Lovell Non-Compete Agreement"). The Lovell Non-Compete Agreement expressly provided that it represented the entire agreement of the parties concerning Lovell's non-disclosure and non-compete obligations.

80.     The Lovell Non-Compete Agreement prohibits Lovell from using or disclosing Plaintiff's confidential information and trade secrets, and specifically identified "lists of actual or potential customers" as among Plaintiff's trade secrets.   The Lovell Non-compete Agreement also prohibited Lovell during the term of his relationship with Plaintiff's franchisee from directly or indirectly (1) carrying on, engaging in, taking part in, rendering services to, or owning or sharing in the earnings of any competitive business wherever located or (2) diverting or attempting to divert any business or customer of Plaintiff's franchisee to any competitive business. The Lovell FA contains similar prohibitions in effect during the term of Lovell's franchise agreement with Plaintiff.

81.     The Lovell Non-Compete Agreement contains additional non-compete obligations

which continue for the two-year period commencing on the expiration or termination of Lovell's relationship with Plaintiff's franchisee. These non-compete obligations prohibit Lovell from directly or indirectly (1) carrying on, being engaged in or taking part in, rendering services to, or owning or sharing in the earnings of any competitive business located within a 10-mile radius of his franchisee studio and within a 10-mile radius of any other franchisee studio or (2) diverting or attempting to divert any business or customer of Plaintiff's franchisee to any competitive business. The Lovell FA contains similar non-compete obligations post-termination or expiration of that agreement.

82.     Plaintiff and Lovell executed an amendment (the "Amendment") to the Lovell FA and the Lovell Non-Compete Agreement in February 2018 that more narrowly defined the fitness services prohibited thereby.  In signing the Amendment, Plaintiff reasonably relied upon, to its detriment, what it subsequently learned were fraudulent misrepresentations by Lovell. Specifically, Lovell misrepresented the name and nature of the fitness business he intended to own and operate, telling Plaintiff that his new business was named "Seattle Fitness LLC" and identifying the business by that name in the Amendment, and misleading Plaintiff as to the services that would be offered by Lovell's business in a letter dated January 16, 2018 and in the Amendment itself. Discovery also revealed that Lovell's assistant had prepared a draft of the Amendment on January 11, 2018 identifying the name of Lovell's business as "Studio 3" and that Lovell removed the reference to Studio 3 before sending the draft to Plaintiff.   Such misrepresentations were material because Plaintiff would not have signed the Amendment but for Lovell's fraudulent misrepresentations.  Accordingly, Plaintiff may elect to rescind the Amendment.

83.     But even if Plaintiff elects not to rescind the Amendment, Lovell's ownership and operation of Studio 3 still violates his obligations under the Amendment.

84.     Lovell signed the Lovell Non-Compete Agreement with a single signature in a dual capacity, both on behalf of DJL Fit, LLC and on behalf of himself individually.

85.     Even if Lovell did not formally sign the Lovell Non-Compete Agreement in his individual capacity, Lovell is still personally liable for violating any of its terms for one or more

of the following reasons:

(a)     Lovell signed the Lovell Non-Compete Agreement on behalf of a related party to the Lovell Non-Compete Agreement – DJL Fit LLC – the corporate entity that would operate the Orangetheory Franchise.   Lovell owned DJL Fit LLC and controlled its corporate actions.  He is the alter-ego of DJL Fit LLC.  The Lovell Non-Compete Agreement that Lovell signed on behalf of DJL Fit LLC further stated that Lovell was individually subject to the terms of the Lovell Non-Compete Agreement.

(b)     The Lovell Non-Compete Agreement is a personal guarantee by Defendant Lovell binding Lovell to its terms and Lovell signed the agreement in a dual capacity as an individual and as a member of DJL Fit, LLC and transmitted the Lovell Non-Compete Agreement to Plaintiff and Plaintiff relied upon Lovell's signature binding Lovell in his individual capacity.

(c)     After signing the Lovell Non-Compete Agreement, Lovell availed himself of Plaintiff's confidential information by accessing such information which Plaintiff permitted based on his signature on the Lovell Non-Compete Agreement.

(d)     Lovell's conduct after signing the Lovell Non-Compete Agreement indicated his assent to the terms of that agreement.

(e)     Lovell signed an Owner's Guarantee where he individually guaranteed the performance of DJL Fit LLC.

(f)     Lovell acknowledged in the 2018 Amendment that "DJL Fit's owner, Lovell, has signed a Nondisclosure and Noncompetition Agreement pursuant to which he, personally and individually, also agreed to be bound by the Non-Competition Obligations."

(g)     Lovell ratified his personal liability under the Lovell Non-Compete Agreement by signing the 2018 Amendment to the Lovell Non-Compete Agreement in his individual capacity.

(h)     Lovell aided and abetted Anderson in breaching the Anderson Non-Compete which contained the same terms and conditions as the Lovell Non-Compete Agreement.

86.     Upon information and belief, on or about February 2018, Lovell sold his interest in the franchised business and franchisee DJL Fit, LLC.

87.     If the Lovell FA terminated when Lovell sold his franchise interest, Lovell's post-termination non-compete obligations under that agreement would have been triggered at that time. Alternatively, if the Lovell FA did not terminate when Lovell sold his franchise interest, then Lovell would still be bound by the non-compete obligations in effect during the term of his franchise agreement.

88.     Irrespective of whether or not the Lovell FA terminated, Lovell is bound by the confidentiality and non-compete obligations of the Lovell Non-Compete Agreement.

89.     Defendant Lovell's confidentiality and non-disclosure obligations have no expiration date. Had Lovell not breached his Non-Compete Agreement, Lovell's two-year non-compete obligations would have expired no sooner than February 2020.  But as a result of Lovell's breach, the expiration date of his non-compete obligations is tolled by the period of his breach, and thereby extended beyond February 2020.

90.     The Lovell Non-compete Agreement and the Lovell FA provide for the recovery of attorney's fees to the prevailing party in any legal proceeding brought to enforce the agreement.

91.     Defendant Lovell's agreements contain Florida choice of law and venue provisions.

**Lovell's Tortious Interference**

92.     Defendant Lovell is a former owner of an Orangetheory franchise and executed the Lovell Non-compete Agreement.

93.     Defendant Lovell knows that all Orangetheory franchise owners – including Anderson – are required to execute franchise agreements and non-disclosure and non-compete agreements that contain restrictions identical to, or nearly identical to, the restrictions present in the Lovell Non-compete Agreement.

94.     Defendant Lovell has known that Defendant Anderson was the owner of an Orangetheory franchise since Anderson acquired his ownership interest in 2015, that Anderson

was bound by the Anderson FA, that Anderson executed the Anderson Non-compete Agreement, that such agreements prohibit Anderson from owning or performing any services for Studio 3 during the term of Anderson's franchise agreement and for 2 years following the termination thereof or the complete disposition of Anderson's interest in his franchisee business, and that Anderson's franchise agreement only recently terminated on or around August 2017 and/or Anderson completely disposed of his interest in his franchisee business at that time.

95.     Defendant Lovell's signed the Anderson Non-compete Agreement as a "witness" to the signature of Defendant Lovell's father.

96.     Defendant Lovell had actual knowledge of the terms of the Anderson Non-compete Agreement and Anderson FA.

97.     Defendant Lovell intentionally procured Defendant Anderson's breach of the Anderson Non-Compete Agreement and the Anderson FA by conspiring with Anderson and Felix to misappropriate and use Plaintiff's trade secrets, and by providing material assistance and resources to Anderson to open a competitive fitness business – Studio 3 – which is jointly owned by Defendant Lovell and Defendant Anderson.

## Damages

98.     Defendants' misappropriation and breach of contract, and Lovell's tortious interference, have caused Plaintiff to lose royalty revenue from its Washington franchisee.

99.     Defendants' misappropriation and breach of contract, and Lovell's tortious interference, harms Plaintiff's business relationships with its present Orangetheory franchisees, and impairs its sale of future Orangetheory Fitness franchises.

100.     Defendants have been unjustly enriched through their misappropriation and use of Plaintiff's customer lists and other confidential materials.

101.     Plaintiff seeks punitive damages on all Counts set forth below.

## Irreparable Harm to Plaintiff

102.     Plaintiff's remedies at law are inadequate and Plaintiff will suffer irreparable injury absent relief enjoining Defendants Anderson and Lovell from continuing to operate a competitive

business in violation of their respective non-compete obligations and from using Plaintiff's confidential information and trade secrets in the operation of a competitive business.

103.    The threatened harm to Plaintiff if an injunction does not issue outweighs any injury the injunction would cause to Defendants.

104.    An injunction against Defendants will not disserve the public interest.

**COUNT I**
**(Anderson's Breach of Contract)**

105.    Plaintiff hereby incorporates by reference paragraphs 1 - 104 as though fully set forth herein.

106.    The Anderson Non-compete Agreement and Anderson FA with Plaintiff are valid and binding contracts.

107.    Defendant Anderson reaffirmed that he is bound by the Anderson Non-compete Agreement and the Anderson FA by seeking to amend these agreements and his non-competition obligations in January 2018.

108.    Defendant Anderson committed a material breach of these contracts by (1) misappropriating, disclosing and using Plaintiff's confidential information and trade secrets in connection with a competitive business; (2) having an ownership interest in and working for a competitive business in violation of his non-compete restrictions; (3) directing business opportunities away from Plaintiff or Plaintiff's franchisees; and (4) failing to return Plaintiff's confidential materials to Plaintiff in Florida upon termination of his franchise agreement.

109.    The restrictive covenants in the Anderson Non-compete Agreement and the Anderson FA protect Plaintiff's legitimate business interests in its (a) valuable confidential business and professional information, (b) trade secrets (as that term is defined in Fla. Stat. §688.002(4)), (c) substantial relationships with prospective and existing customers, and (d) customer goodwill in the geographic locations where competition is prohibited.

110.    The restrictive covenants in the Anderson Non-compete Agreement and the Anderson FA are reasonably necessary to protect Plaintiff's interests in its (a) valuable confidential

business and professional information, (b) trade secrets (as that term is defined in Fla. Stat. §688.002(4)), (c) substantial relationships with prospective and existing customers, and (d) customer goodwill in the geographic locations where competition is prohibited.

111.    Plaintiff has been damaged by Defendant Anderson's breaches.

## COUNT II
### (Lovell's Breach of Contract if Amendment is Voided)

112.    Plaintiff hereby incorporates by reference paragraphs 1 – 104 as though fully set forth herein.

113.    The Lovell FA and the Lovell Non-compete Agreement – prior to the Amendment – are valid and binding contracts.

114.    Defendant Lovell committed a material breach of these contracts by (1) misappropriating, disclosing and using Plaintiff's confidential information and trade secrets in connection with a competitive business; (2) having an ownership interest in and working for a competitive business in violation of his non-compete restrictions; (3) directing business opportunities away from Plaintiff or Plaintiff's franchisees; and (4) failing to return Plaintiff's confidential materials to Plaintiff in Florida upon termination of his franchise agreement.

115.    The restrictive covenants in the Lovell Non-compete Agreement and the Lovell FA protect Plaintiff's legitimate business interests in its (a) valuable confidential business and professional information, (b) trade secrets (as that term is defined in Fla. Stat. §688.002(4)), (c) substantial relationships with prospective and existing customers, and (d) customer goodwill in the geographic locations where competition is prohibited.

116.    The restrictive covenants in the Lovell Non-compete Agreement and the Lovell FA are reasonably necessary to protect Plaintiff's interests in its (a) valuable confidential business and professional information, (b) trade secrets (as that term is defined in Fla. Stat. §688.002(4)), (c) substantial relationships with prospective and existing customers, and (d) customer goodwill in the geographic locations where competition is prohibited.

117.    Plaintiff has been damaged by Defendant Lovell's breaches.

## ALTERNATIVE COUNT II-A
### (Lovell's Breach of Contract if Amendment Enforced)

118.    Plaintiff hereby incorporates by reference paragraphs 1 – 104 as though fully set forth herein.

119.    If the Amendment is valid and binding on Plaintiff, Lovell is still in breach of the Lovell FA and the Lovell Non-compete Agreement based on the amended terms.

120.    Specifically, Defendant Lovell committed a material breach of the Lovell Non-compete Agreement – as amended by the Amendment – by (1) misappropriating, disclosing and using Plaintiff's confidential information and trade secrets in connection with a competitive business; (2) having an ownership interest in and working for a competitive business in violation of his non-compete restrictions; (3) directing business opportunities away from Plaintiff or Plaintiff's franchisees; and (4) failing to return Plaintiff's confidential materials to Plaintiff in Florida upon termination of his franchise agreement.

121.    The restrictive covenants in the Lovell Non-compete Agreement – as amended – protect Plaintiff's legitimate business interests in its (a) valuable confidential business and professional information, (b) trade secrets (as that term is defined in Fla. Stat. §688.002(4)), (c) substantial relationships with prospective and existing customers, and (d) customer goodwill in the geographic locations where competition is prohibited.

122.    The restrictive covenants in the Lovell Non-Compete Agreement – as amended – are reasonably necessary to protect Plaintiff's interests in its (a) valuable confidential business and professional information, (b) trade secrets (as that term is defined in Fla. Stat. §688.002(4)), (c) substantial relationships with prospective and existing customers, and (d) customer goodwill in the geographic locations where competition is prohibited.

123.    Plaintiff has been damaged by Defendant Lovell's breaches.

## COUNT III
### (Anderson and Lovell Violations of the Defend Trade Secrets Act)

124.    Plaintiff hereby incorporates by reference paragraphs 1 – 104 as though fully set forth herein.

125.     At the time of his unauthorized and wrongful access of Plaintiff's computer networks, Anderson was not an authorized user of Felix's password or of Plaintiff's computer networks he accessed.

126.     Anderson, intentionally, without authorization and by improper means gained access to confidential and sensitive information of Plaintiff stored on a private computer network, which at all relevant times operated in and affected interstate and foreign commerce and is accordingly considered a protected computer.

127.     Without authorization or permission, Anderson accessed—and upon information and belief, downloaded—confidential, proprietary, and sensitive business records, including confidential customer lists of current and prospective members containing sensitive business and personal information, which constitute trade secrets used in interstate or foreign commerce under 18 U.S.C. § 1839(3).

128.     Upon information and belief, Anderson undertook these actions personally and at the direction of Defendant Lovell who approved of and ratified Anderson's actions.

129.     Defendants used Plaintiff's trade secrets to contact current or prospective members of a Plaintiff-affiliated studio and solicited those individuals via the internet or otherwise to join their competitive fitness business, Studio 3.

130.     Defendants took all such actions knowingly and intentionally and without regard for the rights of others.

131.     Defendants knew or should have known that Plaintiff's customer lists are valuable, confidential trade secrets belonging to Plaintiff.

132.     Defendants therefore knowingly acquired Plaintiff's trade secrets by improper means and knowingly used those trade secrets obtained by improper means.

133.     Defendants conduct constitutes misappropriation of Plaintiff's trade secrets under 18 U.S.C. § 1836(b)(1).

134.     Plaintiff has been damaged, and continue to be damaged, by Defendants unlawful conduct.

## COUNT IV
### (Anderson's Violations of the Stored Communications Act)

135.    Plaintiff hereby incorporates by reference paragraphs 1 – 104 as though fully set forth herein.

136.    At the time of his unauthorized and wrongful access of Plaintiff's computer networks, Anderson was not an authorized user of Felix's password or of Plaintiff's computer networks he accessed.

137.    Anderson intentionally and without authorization gained access to confidential and sensitive information stored on electronic communication services used by Plaintiff, which at all relevant times operated in and affected interstate and foreign commerce and is accordingly considered a protected computer.

138.    Without authorization or permission, Anderson accessed – and copied – Plaintiff's confidential, proprietary, and sensitive business records, including, confidential customer lists of current and prospective members containing sensitive business and personal information.

139.    Anderson took all such actions knowingly and intentionally and without regard for the rights of others.

140.    Upon information and belief, Anderson undertook these actions personally and at the direction of Defendant Lovell who also approved of and ratified Anderson's actions.

141.    Anderson's conduct constitutes unlawful access to a stored communication under 18 U.S.C. §2701.

142.    As a direct and proximate result of Anderson's unlawful and improper conduct, Plaintiff has suffered damages during the period between July 2017 and the present, and continuing thereafter.

143.    Plaintiff alleges that punitive and exemplary damages are appropriate because Anderson's actions were knowing and willful and in conscious disregard of Plaintiff's rights.

144.    Under 18 U.S.C. § 2707(c), Plaintiff also seeks its attorney's fees associated with the investigation and prosecution of this action.

## COUNT V
### (Anderson and Lovell Violations of Florida's Uniform Trade Secret Act)

145.    Plaintiff hereby incorporates by reference paragraphs 1 – 104 as though fully set forth herein.

146.    At the time of his unauthorized and wrongful access of Plaintiff's computer networks, Anderson was not an authorized user of Felix's password or of Plaintiff's computer networks he accessed.

147.    Without authorization or permission, Anderson accessed –and downloaded – confidential, proprietary, and sensitive business records, including confidential customer lists of current and prospective members containing sensitive business and personal information, which constitute trade secrets under Fla. Stat. § 688.002(4).

148.    Upon information and belief, Anderson undertook these actions personally and at the direction of Defendant Lovell – who approved of and ratified Anderson's actions.

149.    Defendants used the trade secrets to contact current or prospective members of a Plaintiff-affiliated studio and solicited those individuals to join their competitive fitness business, Studio 3.

150.    Defendants took all such actions knowingly and intentionally and without regard for the rights of others.

151.    Defendants knew or should have known that Plaintiff's customer lists are valuable, confidential trade secrets belonging to Plaintiff.

152.    Defendants therefore knowingly acquired Plaintiff's trade secrets by improper means and knowingly used those trade secrets obtained by improper means.

153.    Defendants conduct constitutes misappropriation of Plaintiff's trade secrets under Fla. Stat. § 688.001, et seq.

154.    Plaintiff has been damaged, and continues to be damaged, by Defendants unlawful conduct.

## COUNT V-A
### (Anderson and Lovell's Conspiracy to Violate Florida's Uniform Trade Secret Act)

155.    Plaintiff hereby incorporates by reference paragraphs 1 – 104 and 145 - 154 as though fully set forth herein.

156.    Upon information and belief, both prior to and after the formation of Studio 3, Felix and Defendants Anderson and Lovell conspired and collaborated  to steal from Plaintiff confidential, proprietary, and sensitive business records, including specifically, confidential customer lists of current and prospective members containing sensitive business and personal information, which constitute trade secrets under Fla. Stat. § 688.002(4).

157.    In furtherance of the conspiracy, Anderson gained unauthorized access to Plaintiff's trade secrets – confidential customer lists of current and prospective members on a private computer network – and upon information and belief, copied the lists.

158.    Upon information and belief, Defendants then conspired and collaborated to use Plaintiff's trade secrets that Anderson misappropriated to compete with Plaintiff.

159.    Defendants used Plaintiff's confidential customer lists of current and prospective members to solicit those individuals to join their competitive fitness business, Studio 3.

160.    Defendants knew or should have known that Plaintiff's customer lists are valuable, confidential trade secrets belonging to Plaintiff.

161.    Defendants therefore knowingly acquired Plaintiff's trade secrets by improper means and knowingly used those trade secrets obtained by improper means.

162.    Defendants conduct constitutes a conspiracy to misappropriate and use Plaintiff's trade secrets under Fla. Stat. § 688.001, et seq.

163.    Plaintiff has been damaged as a result of the acts performed through the conspiracy.

## COUNT VI
### (Lovell's Tortious Interference with Contractual Relationships)

164.    Plaintiff hereby incorporates by reference paragraphs 1 - 104 as though fully set forth herein.

165.    The Anderson Non-compete Agreement and the Anderson FA with Plaintiff are valid and binding contracts.

166.    Defendant Lovell knew that Defendant Anderson was an Orangetheory franchisee in Washington State until approximately August 2017 and that Anderson had signed the Anderson Non-Compete Agreement and the Anderson FA with Plaintiff.

167.    Defendant Lovell knew that the terms of the Anderson' Non-Compete Agreement and the Anderson FA prohibited Defendant Anderson from owning or performing any services for Studio 3.

168.    Despite having knowledge of the Anderson Non-compete Agreement and the Anderson FA, Defendant Lovell intentionally procured Anderson's breach by the following improper conduct: (a) conspiring with Anderson and Felix to misappropriate Plaintiff's trade secrets, (b) providing material assistance and resources to Anderson to open a competitive fitness business – Studio 3 – in violation of Anderson's non-compete obligations, and (c) entering into agreements with Anderson relating to the ownership and operation of Studio 3 which necessarily caused Anderson to violate his non-compete obligations.

169.    Defendant Lovell has no lawful justification or privilege for his actions.

170.    Defendant Lovell's tortious interference has caused and continues to cause damage to Plaintiff.

## REQUEST FOR RELIEF

Plaintiff respectfully requests the following relief jointly and severally against Defendants:

1.    Preliminary and permanent injunctive relief  because the Plaintiff's remedies at law are inadequate and Plaintiff will suffer irreparable injury absent such relief;

2.    General damages to be proved at trial;

3.    Special damages to be proved at trial;

4.    Damages for unjust enrichment;

5.    Disgorgement of profits;

6.     Interest thereon;

7.     Exemplary or punitive damages;

8.     Attorneys' fees and associated costs of suit; and

9.     Such other and further relief as the Court deems just and proper.


Dated: January 18, 2019                Respectfully submitted,

                                       PERETZ CHESAL & HERRMANN, P.L.
                                       *Counsel for Plaintiff*
                                       2 S. Biscayne Blvd., Suite 3700
                                       Miami, Florida 33131
                                       Tel: 305-341-3000
                                       Fax: 305-371-6807

                                       By: */s/ Steven I. Peretz*
                                           Steven I. Peretz
                                           speretz@pch-iplaw.com
                                           Fla. Bar. No. 329037
                                           Joshua E. Saltz
                                           jsaltz@pch-iplaw.com
                                           Fla. Bar. No. 70521