UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cv-60981-BLOOM/Valle

ULTIMATE FITNESS GROUP, LLC,
d/b/a Orangetheory Fitness,

    Plaintiff,

v.

KYLE ANDERSON and DAVID LOVELL.

    Defendants.
_____/

## ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS

**THIS CAUSE** is before the Court upon Defendants Kyle Anderson's and David Lovell's Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c), ECF No. [60] (the "Motion"). The Court has carefully reviewed the Motion, all opposing and supporting materials, the record in this case, the applicable law, and is otherwise fully advised.  For the reasons set forth below, the Motion is granted in part and denied in part.

    **I.**    **BACKGROUND**

Plaintiff Ultimate Fitness Group, LLC d/b/a Orangetheory Fitness ("Plaintiff") brought this action against Rachel Felix ("Felix"), Kyle Anderson ("Anderson"), David Lovell ("Lovell"), and Studio 3 Fitness LQA 1 LLC ("Studio 3"), on May 1, 2018.  ECF No. [1].  Plaintiff is a popular fitness franchise with over 933 locations in 17 countries.  ECF No. [29] ("Am. Compl.") ¶ 34. Plaintiff maintains confidential mailing lists of current and prospective members.  *Id.* ¶ 36.  The mailing lists are accessible to certain Orangetheory employees and certain franchisee employees via a password-protected web application.  *Id.* ¶ 38.

In February 2011 Lovell and his company, DJL FIT, LLC ("DJL Fit"), signed a franchise agreement with Plaintiff (Lovell's Franchise Agreement") and executed a non-compete and non-disclosure agreement with Plaintiff ("Lovell's Noncompetition Agreement") (together, Lovell's Non-Compete Agreements"). *Id. ¶ 61*. In August 2015, Anderson was assigned an interest in an Orangetheory franchisee in Washington. *Id.* ¶ 53. Anderson assumed all obligations under the operative franchise agreement ("Anderson's Franchise Agreement") and executed a non-compete and non-disclosure with Plaintiff ("Anderson's Noncompetition Agreement") (together, "Anderson's Non-Compete Agreements"). *Id*.

Felix was employed at an Orangetheory franchisee in Seattle, Washington and had access to Plaintiff's customer and mailing lists. *Id.* ¶¶ 43, 44. On July 12, 2017, Felix terminated her employment at Plaintiff's franchisee. *Id.* ¶ 45. Shortly thereafter, on July 19, 2017 and July 26, 2017, at the direction of Anderson and Lovell, Felix used her old Orangetheory login credentials to access and download at least three mailing lists for Orangetheory Fitness locations in Washington. *Id.* ¶ 48. Felix, Anderson, and Lovell opened Studio 3, a fitness company within a short walking distance from the Orangetheory Fitness studio where Felix had worked in Seattle. *Id.* ¶ 45. Defendants used the contact details listed in the mailing lists to solicit those individuals to join Studio 3. *Id.* ¶ 50. Studio 3 opened for business in April 2018. *Id.* ¶ 52.

In August 2017 Anderson sold his interest in the franchised business and franchisee. *Id.* ¶ 56. In February 2018 Lovell sold his interest in the franchised business and franchisee. *Id.* ¶ 64.

All Defendants moved to dismiss the Amended Complaint on August 21, 2018. ECF No. [37]. On December 12, 2018, the Court granted the motion to dismiss in part, dismissing the claims against Felix based on lack of personal jurisdiction, dismissing the conspiracy claims for failure to state a claim, and dismissing the claims against Studio 3 for improper venue in this

District.  ECF No. [57].  The remaining claims are breach of contract against Anderson (Count I), breach of contract against Lovell (Count II), violations of the Defend Trade Secrets Act ("DTSA") against Anderson and Lovell (Count III), violations of Florida's Uniform Trade Secrets Act ("FUTSA") against Anderson and Lovell (Count V), and tortious interference with contractual relationships against Lovell (Count VI).  Anderson and Lovell filed Answers to the Amended Complaint on December 21, 2018.  ECF No. [59].  On December 28, 2018, Anderson and Lovell filed the Motion.  ECF No. [60].  Plaintiff's Response and Defendants' Reply timely followed.  ECF Nos. [69] and [74].

Defendants request the entry of final judgment in their favor.  Defendants argue that each count fails due to pleading deficiencies.  Additionally, Defendants argue that Plaintiff fails to state a claim for injunctive relief because Plaintiff has not pled that its requested legal remedies are inadequate or that it will suffer irreparable harm without injunctive relief.  Defendants also argue that Plaintiff fails to state a plausible claim for punitive damages because Plaintiff has failed to plead facts to show intentional misconduct or gross negligence.

Defendants contend that claims based on breach of the Franchise Agreements fail because provisions in the agreements that apply to "Owners" do not apply to Anderson and Lovell after they transferred their interests in the franchisees to third parties.  As to the breach of contract claim against Lovell only, Lovell argues that he signed the Franchise Agreement and Noncompetition Agreement for DJL Fit, and not in his individual capacity.  Finally, Anderson argues that Plaintiff agreed to release all claims against him in a second assignment and assumption of franchise license.

Plaintiff responds that it has stated a claim for injunctive relief, contending that the allegations that Defendants solicited Orangetheory's members to join Studio 3 demonstrate

3

irreparable harm.[1]  With respect to Plaintiff's request for punitive damages, Plaintiff refers to specific allegations of Defendants' intentional misconduct in the Amended Complaint.

Plaintiff also responds that Anderson and Lovell have breached the Franchise Agreements notwithstanding the transfer of their interests in the Orangetheory franchisee. Plaintiff alleges breaches of the agreements occurring before Anderson and Lovell sold their interests in the franchisees.  Additionally, Anderson and Lovell each signed an "Owner's Guaranty" with Orangetheory, personally guaranteeing individual performance under their respective Franchise Agreements even after transfer of interest.  As to the argument that Lovell did not sign the Non-Compete Agreements in his individual capacity, Plaintiff argues that Lovell is individually bound to his Franchise Agreement because he signed an Owner's Guaranty. Lovell ratified the terms of the Noncompetition Agreement when he signed in his individual capacity an amendment to its terms.  Plaintiff also argues that Lovell is bound by the Noncompetition Agreement because he availed himself of the benefits of the agreement by accessing confidential information.  Finally, Plaintiff argues that it is improper for the Court to consider the Second Assignment because it is not referenced in the Amended Complaint.

## II.  LEGAL STANDARD

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  A party may move for judgment on the pleadings if there are no material facts in dispute. *See Palmer & Cay, Inc. v. Marsh & McLennan Cos.,* 404 F.3d 1297, 1303 (11th Cir. 2005); *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1291 (11th Cir. 2002).  In rendering judgment, a court may consider the substance of the pleadings and

---

[1] Plaintiff also states that it has supplemented its allegations in the proposed second amended complaint to expressly plead irreparable injury and that the remedies available at law are inadequate. However, while the Motion was pending, the Court denied Plaintiff's Motion for Leave to File its Second Amended Complaint.  *See* ECF No. [76].

4

any judicially noticed facts. *Cunningham v. Dist. Attorney's Office for Escambia Cty.*, 592 F.3d 1237, 1255 (11th Cir. 2010). "A motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion to dismiss." *Guarino v. Wyeth LLC*, 823 F. Supp. 2d 1289, 1291 (M.D. Fla. 2011). As such, a complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Through this lens, the Court considers the instant Motion.

## III. DISCUSSION

Defendants seek judgment in their favor on all remaining claims in the Amended Complaint. As noted above, the Motion challenges Count I, Count II, Count III, Count V, Count VI, and Plaintiff's requests for injunctive relief and punitive damages. The Court will address each of Defendants' arguments in turn.

### a. Plaintiff Sufficiently Alleges Damages to State Breach of Contract Claims

In the Amended Complaint, Plaintiff asserts that Anderson and Lovell breached their Franchise Agreements and Noncompetition Agreements. Under Florida law, "[t]he elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lazard Freres & Co., LLC,* 175 F.3d 913, 914 (11th Cir. 1999) (citing *Abruzzo v. Haller,* 603

So.2d 1338, 1340 (Fla. 1st DCA 1992)).  Defendants argue that Plaintiff has not sufficiently alleged damages.  In response, Plaintiff points to the following damages allegations:

- Defendants started a competing business, Studio 3, which competes with Orangetheory studios within walking distance of a pre-existing Orangetheory location, (Am. Compl. ¶¶ 5, 45);

- Defendants illegally accessed and used Orangetheory's customer lists (*id.* ¶¶ 47-50) and solicited individuals on those lists to join Studio 3. (*Id.* ¶ 50);

- Defendants directed business opportunities away from Orangetheory and its franchisees. (*Id.* ¶¶ 80, 86); and

- As a result of the foregoing actions, Defendants caused Orangetheory to sustain damages (*Id.* ¶¶ 83, 89).

Defendants counter that "the conclusory statement that Defendants 'direct[ed] business opportunities away' does not directly claim customers chose Studio 3 over Orangetheory."  ECF No. [74] at 2 (alterations by Defendants).  The Court is unpersuaded by Defendants' argument.  At this stage, the Court must evaluate all plausible inferences derived from the facts in the Amended Complaint in Plaintiff's favor.  The Court can easily infer that customers left Orangetheory franchisees to join Studio 3, resulting in injury to Plaintiff.  Accordingly, the Court finds that Plaintiff has sufficiently alleged damages resulting from the alleged breaches of contract.

### b. Defend Trade Secrets Act

Defendants argue that they are entitled to judgment on the pleadings as to Plaintiff's DTSA claim because Plaintiff fails to plead: (1) that the trade secrets were used in interstate commerce; (2) that the trade secrets derive independent economic value from not being generally known or readily ascertainable by proper means; and (3) DTSA damages.  The Court disagrees.

First, under, 18 U.S.C. § 1836, "[a]n owner of a trade secret that is misappropriated may bring a civil action … if the trade secret is related to a product or service used, or intended for use, in interstate or foreign commerce."  Thus, it is not necessary that the alleged trade secret itself was

used in interstate commerce, as Defendants suggest.  Rather, the Court must analyze whether the product or service related to the trade secret is used, or intended for use, in interstate commerce. Here, Plaintiff alleges that the trade secrets were related to Orangetheory's fitness services which are offered at more than 900 Orangetheory franchises located throughout the United States and around the world.  Am. Comp. ¶¶ 4, 34.  Plaintiff's allegations satisfy the interstate commerce requirement.

Second, Plaintiff alleges sufficient facts to establish that the trade secrets derive independent economic value from not being generally known or readily ascertainable. Specifically, Plaintiff alleges that it has spent millions of dollars in acquiring members and building its Orangetheory brand and maintains confidential mailing lists of current and prospective members which it uses to solicit new business, *id.* ¶¶ 35-36, it takes measures to protect the secrecy of the confidential mailing lists, *id.* ¶ 39, and the mailing lists are accessible to certain employees of Plaintiff, Orangetheory franchisees, and certain franchisee employees via a password-protected web application, *id.* ¶ 38.  Such a list of current and prospective members, viewed in the light most favorable to Plaintiff, would be valuable to a competing fitness studio seeking to obtain members. Indeed, Plaintiff alleges that Defendants Anderson and Lovell conspired with Felix to misappropriate the confidential mailing lists and used the contact details listed in the mailing lists to contact individuals and solicit those individuals to join a new competing fitness studio.

Plaintiff relies on *Balearia Caribbean, Corp. v. Calvo*, 2017 WL 8780944 (S.D. Fla. Aug. 3, 2017).  There, plaintiff was engaged in negotiations to provide ferry services between Miami, Florida and a casino in the Bahamas.  *Id.* at *2.  During negotiations, Plaintiff's CEO resigned, misappropriated financial data, and provided the confidential information to plaintiff's rival to help the rival consummate the deal that plaintiff had been negotiating.  *Id.* at *6.  In denying the motion

to dismiss, the Court found the allegations in the complaint sufficient "to support a plausible claim that information … derived independent economic value from its secrecy…" *Id.*

Defendants argue that *Balearia* is inapposite because there the complaint stated the misappropriated information's proprietary independent economic value. This Court is unconvinced. The *Balearia* Court inferred the confidential information's economic value from the allegations that defendant stole and took the data to a rival to consummate the deal that plaintiff had been negotiating. Similarly, here, the allegations that the mailing lists were stolen and used to solicit customers support the claim that the lists had independent economic value. In light of those allegations and the allegations concerning Orangetheory's efforts to compile the lists and maintain their secrecy, the Amended Complaint plausibly alleges that the mailing lists were trade secrets.

Third, Plaintiff's allegations satisfy the damages element for the same reasons as explained in the Breach of Contract Section above. *See supra* Section III.a. Additionally, Plaintiff alleges that "Defendants used Plaintiff's trade secrets to contact current or prospective members of a Plaintiff-affiliated studio and solicited those individuals to join their competitive fitness business … Studio 3." Am. Compl. ¶ 95. Defendants request for judgment on the pleadings as to Plaintiff's DTSA claim is denied.

### c. Florida's Uniform Trade Secrets Act

Under FUTSA, "a trade secret consists of information that (1) derives economic value from not being readily ascertainable by others; and (2) is the subject of reasonable efforts to maintain its secrecy." *Levenger Co. v. Feldman*, 516 F. Supp. 2d 1272, 1286 (S.D. Fla. 2007) (citing Fla. Stat. § 688.002(4)). Defendants reassert the arguments they put forth with respect to the DTSA claim – namely that Plaintiff fails to plead facts showing how its mailing lists derive independent economic value by not being generally known to others or readily ascertainable by proper means

and that Plaintiff fails to plead damages. The Court rejects Defendants' arguments for the same reasons as set forth in the DTSA Section above. *See supra Section* III.b.

### d. Tortious Interference with Contractual Relationships

Under Florida law, the elements of tortious interference with a contractual relationship are: "(1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the contract's breach; (4) the absence of any justification or privilege; and (5) damages resulting from the breach." *Treco Int'l S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1288 (S.D. Fla. 2010) (quoting *Special Purpose Accounts Receivable Coop. Corp. v. Prime One Capital Co.,* 125 F. Supp. 2d 1093, 1103 (S.D. Fla. 2000)).

Plaintiff alleges that Anderson entered into the Non-Compete Agreements with Plaintiff, that Lovell knew about Anderson's Non-Compete Agreements, and that Lovell intentionally procured Anderson's breach by conspiring with Anderson and Felix to misappropriate Plaintiff's trade secrets, providing material assistance and resources to Anderson to open a competitive fitness business, Studio 3, and entering into agreements with Anderson relating to the ownership of Studio 3. Am. Comp. ¶¶ 147-50. Plaintiff further alleges that Lovell had no justification or privilege for his actions and that Lovell's tortious interference has caused and continues to cause damages to Plaintiff. *Id.* ¶¶ 151-52.

Lovell challenges the third element – that the defendant intentionally procured the breach – arguing that Plaintiff does not plead how Lovell "conspired" with Anderson or what material assistance and resources Lovell allegedly provided Anderson to start Studio 3. The Court finds that Plaintiff's allegations satisfy the third element. According to the Amended Complaint, Lovell had actual knowledge of the terms of Anderson's Non-Compete Agreements, which contained restrictions similar to those in Lovell's Non-Compete Agreements, including restrictions that prohibit Anderson from owning Studio 3 during the term of Anderson's Franchise Agreement and

for two years thereafter. Am. Compl. ¶¶ 70-71, 76. The allegations that Lovell provided assistance and resources to Anderson to jointly open Studio 3, which Lovell knew to be a violation of Anderson's Non-Compete Agreements, are sufficient to establish that Lovell intentionally procured the breach.

Lovell also challenges the fourth element – the absence of any justification or privilege – arguing that plaintiff failed to show that Lovell's alleged interference was not justified. Lovell contends that a third party may be privileged to interfere with the business relationship of another when the third party's actions are not motivated by malice alone, and Plaintiff does not allege that Lovell acted with malice alone. However, the requirement of alleging motivation by malice alone applies only to claims for tortious interference with at-will contracts. *See Hodge v. Orlando Utilities Comm'n*, No. 6:09-cv-1059-Orl-19DAB, 2009 WL 4042930, at *5 (M.D. Fla. Nov. 23, 2009) ("If the employment is at-will, Plaintiff must allege facts which plausibly establish not only intentional interference, but also that the interferor possessed a purely malicious interest and no legitimate competitive economic interest"). Here, Lovell does not dispute that the Non-Compete Agreements were not terminable at will. Accordingly, Plaintiff is not required to allege that Lovell's interference was motivated by malice alone.

Finally, Defendants argue that Plaintiff fails to allege damages. The claim against Lovell for tortious interference with contractual relationships incorporates all allegations from the breach of contract claim against Anderson. Am. Compl. ¶ 146. Plaintiff sufficiently alleges damages with respect to the tortious interference claim for the same reasons that it sufficiently alleges damages with respect to the breach of contract claim against Anderson.[2] *See supra* Section III.a.

---

[2] Plaintiff's Motion is granted with respect to Plaintiff's claim for tortious interference with a contractual relationship to the extent that the claim is based on a breach of Section 17 of Anderson's Franchise Agreement. *See infra* III.g.

### e. Injunctive Relief

A party seeking injunctive relief "must plead and prove a clear legal right, the inadequacy of a remedy at law, and that an irreparable injury will occur if such relief is not granted." *Dear v. Q Club Hotel, LLC*, No. 15-60474-CIV, 2015 WL 4273054, at *3 (S.D. Fla. July 14, 2015) (internal quotations omitted). "[W]here money damages will adequately compensate a plaintiff for his alleged harms, the plaintiff cannot establish the inadequacy of a remedy at law or that irreparable injury will occur absent an injunction." *Id.*

Defendants argue that Plaintiff fails to plead that its requested legal remedies are inadequate or it will suffer irreparable harm without injunctive relief.

Under Florida law, "[t]he violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant." *See* Fla. Stat. § 542.335(1)(j); *see also I.C. Sys., Inc. v. Oliff*, 824 So. 2d 286, 287 (Fla. 4th DCA 2002). Here, Plaintiff alleges that Defendants breached their Non-Compete Agreements by having an ownership in and working for a competitive business. The crux of the Plaintiff's claims is that Defendants used Plaintiff's confidential information to steal Plaintiff's customers. This is clearly an injury, which is not easily quantifiable in monetary terms. *See Ferrero v. Associated Materials Inc.,* 923 F.2d 1441, 1449 (11th Cir. 1991) ("[T]he loss of customers and goodwill is an irreparable injury.") According to the Amended Complaint, Anderson's non-compete obligations remain in force until August 2019 and Lovell's non-compete obligations remain in force until February 2010. Am. Compl. ¶¶ 55-57, 63-65. Indeed, the Noncompetition Agreements provide that the covenant not to compete is in place "for a period of two (2) years after the expiration or termination of Individual's relationship with Franchisee." ECF No. [49-3] at 3; ECF No. [49-6] at 3. Anderson and Lovell allegedly sold their interests in the franchisees in August 2017 and February 2018, respectively, Am. Compl. ¶¶ 56, 64. As the alleged violations of the non-compete obligations are

ongoing, the request for judgment on the pleadings with respect to Plaintiffs' claims for injunctive relief is improper and, therefore, denied.

### f. Punitive Damages

Under Florida law, "a plaintiff must plead specific acts committed by a defendant" to entitle a plaintiff to recover punitive damages. *Porter v. Ogden, Newell & Welch*, 241 F.3d 1334, 1341 (11th Cir. 2001). Defendants argue that Plaintiff fails to plead specific facts of intentional misconduct or gross negligence to warrant punitive damages. The Court finds that Plaintiff's allegations are sufficient. Plaintiff alleges that Anderson and Lovell directed Felix to steal customer mailing lists, which they knew or should have known were trade secrets, and knowingly used the trade secrets obtained by improper means to solicit individuals to join a fitness studio they owned, which Lovell knew to be in violation of the Non-Compete Agreements. Am. Compl. ¶¶ 48, 50, 69-76, 94, 95, 97, 130-31, 133, 148-49. Those allegations are sufficient to survive judgment on the pleadings.

### g. Breach of the Franchise Agreements

Defendants argue that Plaintiff fails to state a claim for breach of the Franchise Agreements. First, Defendants argue that Sections 13 (Confidential Information) and 14 (Exclusive Relationship) of the Franchise Agreements apply only to "Owners." ECF No. [49-2] at 38-40; ECF No. [49-5] at 37-39. Defendants contend that Anderson and Lovell were no longer "Owners" after they conveyed all franchise ownership interests to third parties. Second, Defendants argue that the restrictions on use of Confidential Information and the non-compete in Section 17 (Effect of Termination or Expiration of This Agreement) apply only "upon termination or expiration of this Agreement" and Plaintiff has failed to allege termination or expiration. ECF No. [49-2] at 43-47; ECF No. [49-5] at 41-45.

As to Defendants' first argument, irrespective of whether Defendants remained "Owners" after transferring their interest in their respective franchisees, Plaintiff alleges a breach of the Franchise Agreements based on conduct by Anderson and Lovell prior to the sale of their interests. According to the Amended Complaint, Anderson sold his interest in the franchisee in August 2017 and Lovell sold his interest in the franchisee in February 2018. On July 19, 2017 and July 26, 2017 (prior to the dates of sale), at the direction of Anderson and Lovell, Felix used her old Orangetheory login credentials to download at least three mailing lists for Orangetheory Fitness locations in Washington. Am. Compl. ¶ 48. Plaintiff further alleges that while Defendants Anderson and Lovell were still owners of, or employed by, another one of Plaintiff's franchisees, they conspired to misappropriate Plaintiff's confidential customer lists and to use those customer lists in operation of Studio 3. *Id.* ¶ 47. The Court finds that these allegations are sufficient to survive motion for judgment on the pleadings. Thus, Plaintiff may pursue claims for breach of Section 13 and Section 14 of the Franchise Agreements.

As to Defendants' second argument, the Court agrees with Defendants that Plaintiff has failed to allege that the Franchise Agreements have terminated or expired. Because the obligations imposed by Section 17 of the Franchise Agreements are predicated upon termination or expiration of the agreement, Plaintiff has failed to state a claim for breach of Section 17.

Accordingly, the Court grants Defendants' request for judgment on the pleadings to the extent that the breach of contract claims against Anderson and Lovell are based on a breach of Section 17 of the Franchise Agreements.

### h. Lovell's Non-Compete Agreements

Defendant Lovell argues that the breach of contract claim against him fails because Lovell did not enter into his Noncompetition Agreement or Franchise Agreement in his individual capacity. ECF No. [49-5] at 57. Plaintiff responds that Lovell is bound by his Franchise

Agreement based on his Owner's Guaranty.[3] As to the Noncompetition Agreement, Plaintiff argues that although Lovell did not sign the agreement in his individual capacity, he ratified its terms by signing in his individual capacity a February 5, 2018 Amendment to that agreement.[4] *See* ECF No. [69-4] (the "Lovell Amendment").

First, Lovell signed the Franchise Agreement on behalf of the corporate franchisee, DJL Fit. ECF No. [49-5] at 57. However, Lovell signed the Owner's Guaranty in his individual capacity. ECF No. [69-3] at 4. Pursuant to the Owner's Guaranty, Lovell "guarantee[d] that Franchisee shall punctually pay and perform each and every undertaking, condition, and covenant set forth in the Franchise Agreement." *Id.* at 1. The Court finds that the Owner's Guaranty binds Lovell individually to the obligations imposed on Franchisee by Lovell's Franchise Agreement. Further, pursuant to Section 13 of Lovell's Franchise Agreement the Franchisee agreed that it and its Owners would abide by the restrictions on the use of Confidential Information set forth in that Section. ECF No. [49-5] at 37. Likewise, pursuant to Section 14 of Lovell's Franchise Agreement the Franchisee agreed that it and its Owners would abide by the non-competition restrictions set forth in that Section. Thus, Lovell is individually bound to the provisions of his Franchise Agreement at issue here.

---

[3] On a motion for judgment on the pleadings "documents that are not a part of the pleadings may be considered, as long as they are central to the claim at issue and their authenticity is undisputed." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1340 (11th Cir. 2014). The Owner's Guaranty states that the "undersigned … personally, absolutely, and unconditionally guarantee[s] that Franchisee shall punctually … perform each and every … covenant set forth in the Franchise Agreement." ECF No. [69-3] at 2. As the document that purportedly obligates Lovell to ensure that the Franchisee performs under Lovell's Franchise Agreement, it is central to the claim against Lovell for breach of the Franchise Agreement. Defendants do not dispute the authenticity of the Owner's Guaranty. Thus, the Court considers said contract for the purpose of ruling on the Motion.

[4] The Court considers the Lovell Amendment on motion for judgment on the pleadings for the same reasons that it considers the Owner's Guaranty. *See supra* n.3.

Second, the Noncompetition Agreement is an agreement between DJL Fit and Lovell and contains signature lines for both parties. ECF No. [49-6]. Lovell signed the signature line designated for "Franchisee" but not for "Individual." *Id.* However, Lovell signed the Lovell Amendment in his individual capacity. ECF No. [69-4] at 5. The Lovell Amendment states that "DJL Fit's owner, Lovell, has signed a Nondisclosure and Noncompetition Agreement pursuant to which he, personally and individually, also agreed to be bound by the Non-Competition Obligations." *Id.* at 2. The Court finds that Lovell ratified the terms of the Noncompetition Agreement by signing the Lovell Amendment in his individual capacity.[5]

### i. Plaintiff's Release of Claims Against Anderson

Defendant Anderson argues that the Court should dismiss the breach of contract, DTSA, and FUTSA claims against Anderson because Plaintiff and Anderson signed a Second Assignment and Assumption of Franchise License ("Second Assignment"), in which Plaintiff released Anderson from claims related to the Franchise. The Second Assignment is not referenced or attached to the Amended Complaint. Defendants' Motion states that the Second Assignment is attached thereto as Exhibit 1, *see* ECF No. [60] at 19, but the document is not attached to the Motion. Regardless, the Second Assignment is related to Anderson's affirmative defense, not to Plaintiff's claims. *See* Defendants' Answer to Plaintiff's First Amended Complaint, ECF No. [59] ¶ 174 ("Plaintiff's claims against Anderson are barred because Plaintiff released all claims against Anderson in an August 25, 2015 Second Assignment and Assumption of Franchise License under Section 7 titled 'Release'."). "Documents that are relevant to the defendant's affirmative defenses, rather than the plaintiff's claim, will fail to meet the centrality requirement." *Miranda v. Ocwen*

---

[5] The Court need not consider Plaintiff's argument that by availing himself of Orangetheory's confidential information Lovell is bound by his Noncompetition Agreement.

*Loan Servicing, LLC*, 148 F. Supp. 3d 1349, 1353 (S.D. Fla. 2015).  Accordingly, the Court will not consider the Second Assignment at this stage.

## IV.    CONCLUSION

For the reasons stated herein, Defendants Lovell's and Anderson's Motion for Judgment on the Pleadings. **ECF No. [60]**, is **GRANTED in part** and **DENIED in part**.  The Motion is granted with regard to Plaintiff's claims for breach of contract (Count I and Count II) to the extent that the claims are for breach of Section 17 of the Franchise Agreements.  The Motion is granted with regard to Plaintiff's claim for tortious interference with contractual relationships (Count VI) to the extent that the claim is based on the intentional procurement of a breach of Section 17 of Anderson's Franchise Agreement.

**DONE AND ORDERED** in Chambers at Miami, Florida this 12th day of March, 2019.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of record